UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL CAMPBELL,

        Plaintiff,                    **DECISION AND ORDER**

      v.                                6:21-CV-06458 EAW

DR. MICHELLE BELGARD, M.D.,

        Defendant.
_____

# INTRODUCTION

*Pro se* plaintiff Carl Campbell ("Plaintiff") alleges pursuant to 42 U.S.C. § 1983 that defendant Dr. Michelle Belgard, M.D. ("Defendant") violated his Eighth Amendment rights by depriving him of adequate medical treatment when she refused to order CT and MRI imaging tests for his chronic back pain. (Dkt. 1). Pending before the Court are four motions: (1) Defendant's motion for summary judgment (Dkt. 46); (2) Defendant's motion to strike Plaintiff's unauthorized sur-replies (Dkt. 69); (3) Plaintiff's motion for an extension of time to respond to Defendant's summary judgment motion (Dkt. 70); and (4) Plaintiff's motion for permission to file his sur-replies (Dkt. 72).

For the reasons that follow: (1) Defendant's motion for summary judgment is granted; (2) Defendant's motion to strike Plaintiff's sur-replies is denied; (3) Plaintiff's motion for an extension of time is denied as moot; and (4) Plaintiff's motion to file his sur-replies is granted.

## BACKGROUND

I. **Submissions Concerning Statement of Material Facts**

Before setting forth the factual background of this matter, the Court must resolve a threshold procedural issue. This District's Local Rules of Civil Procedure require that a party moving for summary judgment file a Statement of Undisputed Facts accompanied by citations to admissible evidence or to evidence that can be presented in admissible form at trial. *See* Loc. R. Civ. P. 56(a)(1). Local Rule 56 also requires a party opposing summary judgment to file a statement admitting or contesting the moving party's Statement of Undisputed Facts:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each such statement must be followed by citation to admissible evidence or to evidence that can be presented in admissible form at trial as required by Federal Rule of Civil Procedure 56(c)(1)(A).

Loc. R. Civ. P. 56(a)(2) (emphasis omitted).

Here, Defendant submitted a statement of undisputed facts (entitled "Rule 56 Statement") in support of her motion. (Dkt. 46-2). In response, Plaintiff filed two documents, one entitled "Response to Summary Judgment" (Dkt. 63 at 2-3) and the other entitled "Response to Declaration" (*id*. at 4-6). The Response to Summary Judgment included Plaintiff's own statement of additional material facts and the Response to Declaration addressed statements made in Defendant's declaration submitted in support of her summary judgment motion.

Plaintiff's submissions fail to comply with Local Rule 56(a)(2). His documents do not include "a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs" and his own statement of additional material facts does not include citations to admissible evidence. (*See* Dkt. 63 at 2-3).

Where, as here, a party violates a district court's local rules, the Court has discretion to deem facts admitted. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005). But a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record. *Id.* at 649. Accordingly, the Court considers the facts asserted by Defendant in her Rule 56 Statement to be admitted *to the extent* they are supported by the record *and* not substantively controverted by Plaintiff's submissions. But because Plaintiff is proceeding *pro se*, the Court construes his filings liberally and considers his submissions for the purpose of deciding Defendant's summary judgment motion. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) ("[I]n a *pro se* case, the court must view the [*pro se* party's] submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers.") (internal quotation omitted). In other words, despite his non-compliance with Local Rule 56(a)(2), the Court has reviewed the filings to ascertain whether an issue of material fact is raised.

Therefore, the facts set forth below are drawn from Defendant's Rule 56 Statement (Dkt. 46-2), the sworn declarations of Defendant (Dkt. 46-3) and Nurse Practitioner Kristin Salotti ("NP Salotti") (Dkt. 46-4), the exhibits submitted in support of Defendant's motion, including Plaintiff's deposition transcript (Dkt. 46-5 at 5-112) and Plaintiff's certified

medical records (*id*. at 117-706), and Plaintiff's Response to Summary Judgment and Response to Declaration (Dkt. 63) and his Response to Declarations (Dkt. 65) to the extent those documents contain admissible and supported facts.

## II. Factual Background

Plaintiff is an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 46-2 at ¶ 1; Dkt. 63 at 4). Throughout his incarceration, Plaintiff received medical treatment from DOCCS staff as well as outside providers. (Dkt. 46-2 at ¶¶ 9, 11, 20, 21, 22, 37, 39, 40; Dkt. 63 at 2, 4, 5). Plaintiff's medical history includes several chronic co-morbidities, including arthritis, chronic back pain, spinal stenosis, neuropathy, osteomyelitis, and osteoarthritis. (Dkt. 46-2 at ¶ 7; Dkt. 63 at 2). Plaintiff suffered from mobility issues that progressively worsened during the times indicated in the complaint and he used several mobility-assistance devices, including a cane (Dkt. 46-3 at 12; Dkt. 65 at 2), crutches (Dkt. 46-3 at 15; Dkt. 65 at 2), a walker (Dkt. 46-3 at 32), and a wheelchair (*id.*; Dkt. 65 at 2). Plaintiff has had multiple surgical procedures related to his spine, including a cervical discectomy in 2014, and a laminectomy and spinal fusion performed in 2012. (Dkt. 46-2 at ¶ 7; Dkt. 63 at 2). At the relevant times, Plaintiff also had several open wounds and ulcers on his lower extremities that required regular treatment from a wound care team at Upstate Medical University. (Dkt. 46-3 at 3-8; Dkt. 63 at 2, 5).

On June 26, 2018, while he was housed at the Auburn Correctional Facility ("Auburn"), Plaintiff complained of back and neck pain during an emergency sick call. (Dkt. 46-3 at 17). Three days later, a provider at Auburn ordered x-ray images of Plaintiff's

cervical and lumbar spine. (*Id.*). On July 6, 2018, Plaintiff fell and he reported sharp pain down his back. (*Id.* at 18). After Plaintiff's fall, an Auburn provider ordered additional x-ray images of Plaintiff's spine and he was transported to the facility infirmary in a wheelchair. (*Id.*).

On July 10, 2018, Plaintiff fell again and he was once again admitted to the Auburn infirmary. (*Id.* at 29, 30). According to the infirmary admission note, Plaintiff stated that he fell because his "leg gave out." (*Id.* at 30). A provider at Auburn ordered radiologic imaging of Plaintiff's spine which revealed moderate degenerative changes. (*Id.* at 92).

Plaintiff was transferred to Five Points on July 13, 2018. (*Id.* at 37).[1] A few days later, Plaintiff was examined by NP Salotti at the new facility. (*Id.* at 40-41; Dkt. 46-4 at ¶ 7). During that examination, NP Salotti questioned whether Plaintiff needed a CT or MRI in relation to his chronic back pain and immobility issues and did not order either imaging test. (*See* Dkt. 46-3 at 41; Dkt. 46-4 at ¶ 10). According to NP Salotti, "there was no clear medical reason to order a CT or MRI." (Dkt. 46-4 at ¶ 10).

On July 24, 2018, Plaintiff requested a CT scan due to back pain and numbness in his lower extremities. (Dkt. 46-3 at 21). Defendant, who was employed by DOCCS as a

---

[1] Plaintiff disputes parts of Defendant's declaration (Dkt. 46-3) regarding his initial care at Five Points. (*See* Dkt. 63 at 5). Plaintiff asserts in conclusory fashion that "[he] does not agree with numbers 15, 16, 17, 18, 19, 26, and 44" in Defendant's declaration. (*See id.*). Plaintiff does not expand upon the basis for his disagreement or point to any admissible evidence to contradict these paragraphs. Based on its review of the record, the Court does not consider these conclusory objections to raise a material dispute of fact. *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation" to raise an issue of triable fact).

medical doctor and assigned to Five Points (*id.* at 1; Dkt. 1 at 2), denied Plaintiff's request because, in her judgment, an emergency CT scan was not medically indicated (Dkt. 46-3 at 5). Plaintiff alleges that Defendant's denial was improper and constituted deliberate indifference. (*See* Dkt. 1 at 5).

On July 26, 2018, Defendant reviewed Plaintiff's x-ray results from the images taken on July 10, 2018. (Dkt. 46-3 at 5; 92-93). As noted above, those results indicated moderate degenerative changes in Plaintiff's spine. (*Id.* at 2, 92). After that review, Defendant continued to believe that a CT scan was not medically warranted. (*Id.* at 5, 92-93).

Plaintiff's condition worsened during his time at Five Points. On July 31, 2018, Plaintiff reported that his legs could no longer hold him up and his Ambulatory Health Record states that it required "great difficulty" for him to lift his legs from a seated position. (*Id.* at 23). On August 2, 2018, Plaintiff filed a grievance regarding his denied request for a CT scan. (Dkt. 65 at 7).

Throughout his time at Five Points, Plaintiff also received regular treatment for the open wounds and ulcers on his lower extremities. (Dkt. 46-3 at 23-24). This included transfers to Upstate Medical University for treatment by a wound care team. (*Id.* at 6-7; Dkt. 63 at 5). On August 13, 2018, the wound care clinic at Upstate Medical University called Five Points and requested an MRI of Plaintiff's lower extremities. (Dkt. 46-3 at 6; Dkt. 63 at 5). After receiving that request, Defendant completed a form to transfer Plaintiff to the Walsh Regional Medical Unit ("RMU") to receive a higher level of care. (Dkt. 46-3 at 6; Dkt. 63 at 5). Defendant did not order the MRI requested by the Upstate Medical

University wound care team. (Dkt. 46-3 at 6-7; Dkt. 63 at 5). Defendant states that she did not order the MRI because it could have delayed Plaintiff's transfer to the RMU. (Dkt. 46-3 at 6-7). Plaintiff alleges that Defendant denied the MRI and initiated his transfer to the RMU in retaliation for the grievance he filed on August 2, 2018. (Dkt. 65 at 1-2, 4).

On August 20, 2018, Plaintiff was transferred out of the RMU and taken to Upstate Medical University. (Dkt. 46-3 at 8, 50). Once there, Plaintiff complained of worsening lower extremity weakness, urinary incontinence, and diminished sensation below his umbilicus. (*Id.* at 220). Plaintiff was transferred to the emergency department and had a CT and MRI performed on his spine. (*Id.* at 216; 222-25). An MRI of Plaintiff's thoracic and lumbar spine showed "broad-based disc bulge with disc extrusion in to [sic] the spinal canal causing cord impingement with severe spinal canal stenosis." (*Id.* at 216). On August 23, 2018, Plaintiff underwent a spinal decompression and fusion surgical procedure. (*Id.* at 230). Plaintiff was discharged from Upstate Medical University on August 27, 2018. (*Id*. at 237).

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on May 28, 2021. (Dkt. 1). After screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiff was permitted to proceed to service on a claim of medical indifference against Defendant in her personal capacity. (Dkt. 8).

After the completion of discovery, Defendant filed the pending motion for summary judgment on March 15, 2024. (Dkt. 46). On May 13, 2024, Plaintiff filed his response in opposition to Defendant's summary judgment motion. (Dkt. 63). Defendant submitted her reply on May 22, 2024. (Dkt. 64).

Plaintiff filed an unauthorized sur-reply on May 30, 2024 (Dkt. 65), and a second unauthorized sur-reply on September 27, 2024 (Dkt. 68). Defendant moved to strike both sur-replies. (Dkt. 69). Plaintiff then moved for additional time to respond to Defendant's summary judgment motion. (Dkt. 70). On October 10, 2024, Plaintiff filed a motion requesting permission to file the sur-replies. (Dkt. 72). As discussed further below, in light of Plaintiff's *pro se* status, the Court has read and considered his sur-replies notwithstanding the fact that they were filed without leave of the Court.

## DISCUSSION

### I. Defendant's Motion to Strike

Defendant seeks to strike Plaintiff's filings at Docket 65 and Docket 68 as unauthorized sur-replies. (Dkt. 69). Defendant's motion to strike is denied.

This District's Local Rules of Civil Procedure state that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted." Loc. R. Civ. P. 7(a)(6). But

ultimately "whether to permit the filing of a sur-reply is entirely within the Court's discretion." *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Plaintiff did not comply with Local Rule of Civil Procedure 7(a)(6). He did not obtain the Court's permission prior to filing his sur-replies nor did he offer a reason for his failure to include the information contained in the sur-replies in his initial opposition papers. Nonetheless, the Court exercises its discretion and will consider the sur-replies.[2] *See, e.g., Dean v. Robinson*, 656 F. Supp. 3d 400, 406 (W.D.N.Y. 2023).

To the extent Defendant raises concerns that Plaintiff advances a retaliation claim for the first time against Defendant in his sur-replies (*see* Dkt. 69-1 at 4), the Court agrees that Plaintiff cannot assert a new cause of action for the first time in an unauthorized sur-reply filed in opposition to a post-discovery summary judgment motion. Thus, in assessing whether an issue of material fact exists with respect to the deliberate indifference claim, the Court will consider Plaintiff's argument that Defendant refused to order the MRI requested by the wound care team at Upstate Medical University in retaliation for the

---

[2] Defendant also requests the opportunity to file a reply to Plaintiff's sur-replies in the event that the Court denies her motion to strike. (Dkt. 69-1 at 5). This request is denied as moot as the Court grants Defendant's summary judgment motion.

grievance he lodged concerning his denied request for a CT scan. (Dkt. 65 at 1, 4; Dkt. 68 at 2). But the Court will not consider this argument to constitute a new cause of action.

As Defendant notes, a retaliation claim was not raised in the complaint and Plaintiff has not asked for leave to file an amended complaint. (Dkt. 69-1 at 4). Moreover, even if Plaintiff sought the Court's permission to amend his complaint, such a request would be denied due to his undue delay in asserting the claim. *See Green v. Schmelzle*, No. 6:11-CV-06063 (EAW), 2019 WL 4276994, at *3 (W.D.N.Y. Sept. 10, 2019) (denying the plaintiff's motion for leave to amend the complaint after the close of discovery and the filing of the defendant's summary judgment motion). Plaintiff provides no explanation for the delay in asserting this retaliation claim. Instead, he only states that he could have "raise[d] the issue of reprisal retaliation for filing the grievance, but [he] did not." (Dkt. 65 at 4). Accordingly, the Court will not construe Plaintiff's allegations of retaliation as constituting a new cause of action. *See, e.g.*, *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment.").

II.     **Plaintiff's Motion for an Extension of Time**

By letter dated October 4, 2024, Plaintiff requested that the Court grant him additional time to respond to Plaintiff's summary judgment motion. (Dkt. 70). Plaintiff's request appears to be based on confusion related to Defendant's motion to strike his unauthorized sur-replies. (*See id.*). Considering that Plaintiff timely filed his opposition to Defendant's summary judgment motion (Dkt. 63), and that the Court has decided to

accept the information contained in his sur-replies to the extent described above, the Court denies Plaintiff's motion for an extension of time as moot.

## III. Defendant's Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d

Cir. 2011)). The non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B. Deliberate Indifference Claim

The Eighth Amendment protects incarcerated individuals from being subjected to cruel and unusual punishment, which may include prison officials' deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "The standard for deliberate indifference includes a subjective component and an objective component." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

To satisfy the objective component, a plaintiff's medical needs must be sufficiently serious. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Sloane v. Borawski*, 64 F. Supp. 3d 473, 492 (W.D.N.Y. 2014) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). "Where the claims concern the alleged inadequacy of treatment, as opposed to the complete denial of treatment, the seriousness inquiry is narrower. In such cases, the focus is on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Lawrence v. Evans*, 136 F. Supp. 3d 486, 489-90 (W.D.N.Y.

2015) (internal quotation marks and citations omitted), *aff'd*, 669 F. App'x 27 (2d Cir. 2016).

To establish the subjective component, a plaintiff must show that the prison official had actual knowledge of his serious medical needs but was deliberately indifferent to those needs. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Indeed, "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance*, 143 F.3d at 703). "In this connection, the Supreme Court has held that 'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" *Id.* (quoting *Estelle*, 429 U.S. at 106).

This case presents a scenario where Plaintiff contends the treatment was inadequate, as opposed to non-existent. While delay in treatment can give rise to a constitutional violation and satisfy the objective prong, it is typically only in "particularly egregious circumstances." *Lawrence*, 136 F. Supp. 3d at 490 (W.D.N.Y. 2015) (citations omitted). It is difficult to conclude that a rational jury would find that the delay in providing a CT scan or MRI meets the objective prong of the deliberate indifference test—particularly when Plaintiff ultimately obtained the tests and necessary surgery in less than 45 days after

he was originally transferred to Five Points and about 30 days after Defendant originally denied Plaintiff's request for a CT scan. *See Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) ("In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay."). But accepting for purposes of this motion that the objective prong has been satisfied, it is evident that Defendant is entitled to summary judgment because no rational jury could find in favor of Plaintiff under the subjective prong of the test.

"A prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Specific to medical treatment at prison facilities, "prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Id.* (citing *Chance*, 143 F.3d at 703). "Moreover, a prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference." *Williams v. Smith*, No. 02CIV4558DLC, 2009 WL

2431948, at *9 (S.D.N.Y. Aug. 10, 2009). Indeed, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107.

### 1. The Denied CT Scan

Defendant's conduct was within her medical discretion regarding Plaintiff's treatment. Defendant has established that her decision not to order the CT scan was based on her review of Plaintiff's medical record and her judgment that it was not indicated. (Dkt. 46-3 at 5). As noted above, Plaintiff's medical record reflected a history of chronic back pain, spinal stenosis, neuropathy, a cervical discectomy and laminectomy. (Dkt. 46-2 at ¶ 7; *see* Dkt. 46-3 at 17-18). It also showed that Plaintiff had a recent history of falls and required the use of mobility assistance devices. (Dkt. 46-3 at 12, 15, 18, 29, 30, 32). Two days after Plaintiff requested the CT scan, Defendant reviewed the results of Plaintiff's July 10, 2018, x-rays, which simply indicated moderate degenerative changes in Plaintiff's spine. (Dkt. 46-3 at 5). After that review, she continued to believe that a CT scan was not warranted. (*Id.*). And this conclusion was consistent with the one reached by another medical provider (NP Salotti) about 10 days earlier. (Dkt. 46-4 at ¶ 10). Based on this evidence, it is clear that Defendant was well aware of Plaintiff's spinal condition and related symptoms but did not believe a CT scan was necessary for Plaintiff's treatment.

Although Plaintiff does not agree with paragraph 26 of Defendant's declaration, in which she states that she denied the CT scan because it was not medically indicated in her judgment, Plaintiff does not articulate a counterargument nor point to or provide any

evidence to indicate that Defendant acted with subjectively culpable intent, i.e. that she "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety." *Darby*, 14 F.4th at 128. Nothing in the record indicates that Defendant contemplated the severity of Plaintiff's spinal condition or knew that it would require surgical intervention. The failure to recognize the level of severity of Plaintiff's condition, at best, constituted negligence, but negligence does not amount to deliberate indifference. *See id.* at 128 ("'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' does not meet this standard.") (alteration in original) (quoting *Farmer*, 511 U.S. at 828). Moreover, while Plaintiff may have wished that Defendant ordered a CT scan on July 24, 2018, it is well settled that "disagreements over treatment do not rise to the level of a Constitutional violation." *Graham v. Gibson*, No. 04-CV-6088-CJS-MWP, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) (citing *Chance*, 143 F.3d at 703).

### 2. The Denied MRI

Similarly, Defendant's decision not to order the MRI requested by the Upstate Medical Center wound care team was within her discretion as a medical provider. As an initial matter, the MRI was requested by a wound care team that was treating Plaintiff for the ulcers on his legs and feet, not his spinal condition or chronic back pain. (*See* Dkt. 46-3 at 4-6, 25). Indeed, the MRI was specifically requested for Plaintiff's "lower extremities" as opposed to his spine. (*Id.* at 25). The timing of the request also indicates that the MRI was ordered as a follow-up to bone scans on Plaintiff's right foot taken on July 27, 2018, in connection with his ulcers and bone necrosis. (*See id.* at 5-6, 95).

By contrast, there is no indication that the Upstate Medical Center wound care team was treating Plaintiff for his spinal condition or that the requested MRI would include imaging of Plaintiff's spine. Thus, Plaintiff's contention that the wound care team ordered the MRI "because they felt a very strong concern with the patient that something was wrong with the patients [sic] back and an MRI was warranted" (Dkt. 63 at 2), amounts to unfounded speculation as the record does not support that claim, *see Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.").

Plaintiff also argues that Defendant refused to order the MRI in retaliation for the grievance that he filed due to Defendant's decision not to order the CT scan he previously requested. (Dkt. 65 at 1, 4, 5; Dkt. 68 at 2). But this is complete speculation. There is no evidence in the record demonstrating that Defendant was even aware of the grievance at the time she denied the MRI on August 13, 2018. Plaintiff filed his grievance on August 2, 2018. (Dkt. 1 at 5, 9; Dkt. 65 at 7). The Inmate Grievance Committee ("IGRC") did not respond to the grievance until August 21, 2018, and that response does not indicate that IGRC spoke with Defendant about the grievance. (Dkt. 65 at 7). The grievance also does not specifically name Defendant (*see* Dkt. 1 at 5; Dkt. 65 at 7), and Plaintiff never asserted that he spoke with Defendant about the grievance. As such, there is nothing in the record to suggest that the grievance influenced Defendant's state of mind when she declined to order the MRI. *See Long v. Annucci*, No. 917CV916GLSTWD, 2023 WL 8602053, at *4 (N.D.N.Y. Dec. 12, 2023) ("[The plaintiff's] statement that [the defendant] made his deferral determinations to retaliate against [the plaintiff] for filing multiple medical

requests and grievances amounts to unfounded speculation: the record is devoid of any evidence that [the defendant] harbored ill will towards [the plaintiff] or had an incentive to base his determinations on anything other than medical judgment.") (internal citation omitted); *Benitez v. Parmer*, No. 9:12-CV-0448 GTS DEP, 2015 WL 1456642, at *10 (N.D.N.Y. Mar. 30, 2015), *aff'd*, 654 F. App'x 502 (2d Cir. 2016) ("[N]o reasonable factfinder could conclude, based on the record, that either defendant . . . provided plaintiff inadequate medical treatment in retaliation for his filing of those grievances or that such alleged retaliation provides a legal basis for plaintiff's deliberate medical indifference claim" where plaintiff's allegation of retaliation was "unsupported by any record evidence.").

Defendant explained she declined to order the requested MRI because she determined it would delay Plaintiff's transfer to the RMU. (Dkt. 46-3 at 6-7). Even if the MRI was related to Plaintiff's back or spine, Defendant is permitted to rely on her own medical judgment to pursue a different course of treatment than the treatment recommended by outside specialists. *See Ravenell v. Van der Steeg*, No. 05 CIV 4042 WHP, 2007 WL 765716, at *6 (S.D.N.Y. Mar. 14, 2007) (granting summary judgment in favor of prison physician who opted for non-surgical treatment where another physician recommended surgery).

Although Defendant declined to order the specific imaging tests that Plaintiff contends were necessary, she still elevated Plaintiff's level of care, which ultimately resulted in him receiving the scans and treatment he needed for his spinal condition. (Dkt. 46-3 at 6-8). The total amount of time between when Plaintiff first requested that

Defendant order the CT scan and his surgery at Upstate Medical Center was about one month. (*See* Dkt. 46-2 at ¶¶ 30-31, 44). That relatively brief timeframe does not support Plaintiff's contention that Defendant's actions constituted cruel and unusual punishment. *Cf. Lloyd v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) (holding on a motion to dismiss that "[t]he argument that the doctors here did not take [the plaintiff's] condition seriously is plausible, given the length of the delays. <u>Nine months</u> went by after the MRI was first requested before the MRI was actually taken.") (emphasis added); *Stevens v. Goord*, 535 F. Supp. 2d 373, 389 (S.D.N.Y. 2008) (holding that the physician's decision not to pursue a course of treatment, "given the pain and discomfort that plaintiff continued to suffer for approximately <u>eight additional months</u> as a result, [went] beyond mere 'negligence' and serve[d] as an additional basis for plaintiff's constitutional claim") (emphasis added).

Even if Plaintiff could prove that Defendant's decisions were negligent, that would still not rise to the level of culpability necessary to maintain his Eighth Amendment claim. *See Estelle*, 429 U.S. at 106. On the record before the Court, no reasonable trier of fact could conclude that Defendant's decision not to order either imaging test was the result of deliberate indifference to Plaintiff's serious medical needs. As such, Defendant is entitled to summary judgment on Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment.

## CONCLUSION

For the foregoing reasons: (1) Defendant's motion for summary judgment (Dkt. 46) is granted; (2) Defendant's motion to strike Plaintiff's sur-replies (Dkt. 69) is denied; (3) Plaintiff's motion for an extension of time to respond to Defendant's summary judgment

motion (Dkt. 70) is denied; and (4) Plaintiff's motion to file his sur-replies (Dkt. 72) is granted. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   February 4, 2025
         Rochester, New York